Good morning, and may it please the Court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as amicus curiae in this case, and I would like to reserve one minute of my time for rebuttal, if I may. The EEOC became involved in this case because the District Court erroneously concluded that Ms. Myers-Desco needed to do more than she did in its brief on appeal. Although, if you look at the brief that it filed with this Court, it's hard to discern what Lowe's thinks Ms. Myers-Desco did wrong. Ms. Myers-Desco filed a charge with the EEOC, and then she received from the EEOC a right to sue notice indicating that she could go to court. Well, she didn't just do that. She went over and asked them to send it to her because she didn't want them to do anything more. All she wants them to do is give them a right, a letter to sue. She requested a right to sue letter from the Nevada agency. In other words, she's supposed to file a complaint with your agency. Your agency's supposed to do an investigation, and she said, here's the complaint, but I've already got my suit filed, and I don't want you to do anything. Just give me a right to sue letter. The suit that she had filed was a different lawsuit on a different matter. It was a different lawsuit. Let's look at it very carefully. The allegations of the complaint, if there are allegations to be made on one of the allegations, it can't be even said without some discrimination being alleged. She filed a lawsuit in state court raising two claims, state tort law claims. Yeah, what were they? And they were negligent, I believe, negligent infliction of emotional distress and negligent failure to supervise. Yeah, and the negligent failure to supervise, if you read all the allegations in it, has all to do with discrimination. There's nothing in there that doesn't have anything to do with discrimination. She labeled it negligent supervision, but it had all to do with supervision. It had all to do with discrimination. Then she went over to your agency, filed a complaint, didn't even wait for you to do anything, to go out and investigate, said, give me a letter to sue. I want to sue. So you gave her one. She did not ask the EOC for a right to sue letter. She didn't ask the EOC. She went to NERC, and NERC gave her the letter. Then they said to you, give her the right to sue. I mean, they didn't do anything, and neither did your agency. Not a thing. Title VII does not hinge a plaintiff's ability to go forward with her Title VII claims in court on either the state agency or the EEOC doing anything with respect to a charge that was filed. So the Congress put all this stuff into effect into the law, that you're supposed to go see the EEOC or the Nevada Commission and let them investigate first. They did all that for no good reason, because you don't need to. All you need is just a letter to sue. And you gave them a letter to sue. There's two separate things going on here. One is, Title VII does lay out a number of steps that the EEOC should take in response to charges, and the EEOC does that in a very large number of charges every year, with great success. We get relief for individuals, and we issue findings that we found no discrimination, and in many cases, that brings an end to the case. So we do what Congress intended, but we can't do it in every case. Is there anything in this record which suggests you did anything except issue a letter to sue? In this case, no, because we relied on the Nevada agency and... Is there anything in this record that suggests that the Nevada agency did anything except send you a letter telling them to sue? No, and neither... And so neither agency did anything in this record except cave in to Plaintiff's Counsel's idea that they wanted a letter to sue. And I'm supposed to say, well, artful pleading, that's pretty good, nothing in the statute suggests this, so guess what? You can go on even though all you're going to get is a letter to sue, and you don't have to do a thing. Why would the Congress set you up if that was to be the case? Congress knew that we could accomplish some things but not everything, and let me suggest that this Court has already decided this very question in a case that we cited on page 19 of our brief, although we pointed to the paragraph in front of the paragraph I'm about to mention. That's Arnold v. United States, and in that, the Plaintiff had held off on filing her State Tort Claims while she waited for the Title VII claim to make its way through the administrative process. She then asked the District Court and ultimately this Court on Appeal to consider that the time for her filing her State Claims had been told, and this Court said, no, we see no reason to toll under California State law, but more importantly, this Court said that Federal policy does not mandate equitable tolling. Arnold, the Plaintiff, was not under an obligation to delay litigation until her Title VII claims were resolved. Well, but what we're really talking about here, as you well know, is a jurisdictional prerequisite to coming to this Court, and if you're really arguing that all a Plaintiff needs to do, file her complaint, cleverly suggest what it means, but it's discrimination written into it all the way, and call you up and say, give me a letter to sue, and that's all they need to do, it doesn't seem to me the jurisdictional prerequisite is very big. All they got to do is have you say, go sue. I don't have to do anything. I don't have to do one thing. Just go sue. I see that my time is up. May I have a minute You may answer my question. Yes, certainly. Title VII places jurisdiction over Title VII claims in the Federal Courts in section 2000E-5F3, and it simply says that District Courts have jurisdiction over claims that arise under Title VII. Everything else that a Plaintiff must do before they file their lawsuit is a pre-suit requirement of the statute that is not jurisdictional, that is subject to waiver or equitable tolling, and in this instance, in fact, none of those things are required because the Plaintiff did everything that the statute requires her to do. And she did more. She went over and got you to give her a letter to sue without letting you do what you had to do. We do not have to do that. That is discretionary on our part. We are in control of our own investigations. We can withhold. If someone asks to dismiss their charge, we can deny that request. If someone asks for a right to sue, we can dismiss the letter and continue the investigation. Our regulations are explicit on that, and I'd be happy to give you the citation to that. It's at 1601.28, subsection A-3 indicates that 1 and 2 are a request for right to sue when more than 180 days has passed, in which case we must issue the right to sue notice. Subsection 2 is where less than 180 days have passed, where we may issue the right to sue notice, and this Court has upheld that as a valid regulation in Bryant v. California Brewery Association. I have a tough time finding any case, and I don't want to take you way over, any case where you can cite where all the Plaintiff does is file her complaint, cleverly pleads around she had a discrimination claim in the middle of the complaint, files something with you, doesn't let you do anything, but immediately says, give me the right to sue, and encourages you to give her the right to sue, you do. I can't find that particular case. I can find cases where, yes, they give it to you, and they say, we've already filed, and we want a right to sue, and you make some determinations about that, or there's some evidence that you did, but in this record, there's no evidence of that. We have only one thing. Give me a right to sue. I want a right to sue. I don't want you involved. All I want to do is get around the jurisdictional prerequisite. And as a final point, in McDonnell Douglas v. Green, the Supreme Court addressed, albeit a different claim that the Plaintiff had not complied with the jurisdictional prerequisites, which are not jurisdictional, as I pointed out, and the Court said clearly, there are only two requirements for a Plaintiff to file a lawsuit under Title VII. Those are to file a charge, and to receive a right to sue notice from the EOC, and file your case within 90 days of that notice. And I'd be happy to answer any more questions on these items. Good morning. May it please the Court. Sharon Nelson on behalf of Appellant Judge Smith, I'd like to challenge you to tell me where my client did something wrong in this particular case. Well, I don't know that the client did it. I don't know that. I'm worried that the lawyer did. The lawyer didn't let the process work. That's not the worry. The worry is that you don't have a jurisdictional prerequisite. Twice now you've called my pleadings clever, and I appreciate that. But what my client was expected to do... Well, I hope you do, because I think they were. What my client was expected to do is exactly what she did actually prior to filing suit she initiated by filing intake forms with the Nevada Equal Rights Commission, a complaint. She then filed suit in June. And in June, she filed suit alleging the state tort claims you previously discussed. Then, because Nevada has an administrative code that allows for permissive closure of a claim if a lawsuit has been filed, a letter was sent to the state agency. And the state agency did not at that point in time have to close the claim. They chose to close the claim. Thereafter, there was no communication between my client and the EEOC. That letter was forwarded from the state agency to the EEOC, who looked at it and said, based on resource considerations and based on our review of the file, the complainant has been provided a fair opportunity to present her case and elect a course of action. We're dismissing and issuing a right to sue letter. So I understand that you may take issue with what the EEOC did with the failure to investigate, or with what the Nevada Equal Rights Commission did with the failure to investigate. But what I take issue with is I have a plaintiff who is forever barred from going forward on a gender discrimination claim because the lower district court placed the entire onus of making an error on a plaintiff. I do not have the power as plaintiff's counsel to force an agency, either federal or state, to issue a right to sue, even if this court believes it was premature. And neither does my client. But in essence, what the district court did is said, we do, and completely foreclosed her from going forward on those claims. And that was error. Well, it seemed to me, and I'm just, I'm asking you this question, if in fact one submits such a record, as you've submitted here, and there is just no evidence the agency did anything except succumb to what you're suggesting, just give a letter for suit without even doing any investigation, or send a letter to the EEOC and tell them to do the same and no investigation whatsoever has been done, it seems to me at that point it is the plaintiff who bears some responsibility, not just the agency. They're the ones asking it to go forward without even having what Congress wanted to have happen, an investigation. But nowhere in the plaintiff's request did we indicate that we did not want an investigation to go forward. All we did... Did the agency close the investigation on its own? Yes, yes it did, Your Honor. Did it receive a request to close the investigation? What we indicated in the record was that the Nevada Administrative Code allowed it to do that, a lawsuit had been filed, and we were requesting a right to sue letter. So the agency made the decision, but the agency didn't make the decision out of the blue, did it? No, but... And you made the request. We of course made the request. You made the request on the assumption that closing would be sufficient for your purposes to give you the right to sue letter to go to court. What the district court said is that it doesn't work that way. If you're the one that asked them to close, you are at risk that you don't get the chance to go to court afterwards. So I hear your argument, but I also don't know that you're an innocent bystander in this. The chain of events that led to the issuance of the right to sue letter was a chain that began with your request to have that letter issued. And I understand that contention, Your Honor, but even the Pennsylvania case cited by the defendants when they were dealing with the motion to dismiss at the lower court level, in that Pennsylvania case there was a discussion that said any claimant at any time may request a right to sue letter prior to the expiration of an investigation, but they may not demand such a right to sue letter. We never at any point demanded a right to sue letter. But the real question though is not do you have the right to request, but are you immune from consequences if it turns out the request results in something that's unfortunate for your client? We're immune from consequences if it was a decision that was made in error by an agency over which we had no control. Yes, absolutely. So with that being said, we certainly believe that the district court's lower court action was inappropriate. At a minimum, why were we not given the opportunity to have this matter remanded back for further administrative proceedings? At a minimum. But certainly dismissal was inappropriate given that my client can now not go forward on any title sales and claim whatsoever for reasons which we contend had absolutely no involvement of hers. I would like... Let me ask you another question since we're getting to the merits here a little bit. As I understand it, your client did file a charge of discrimination? She did. She filed... Under oath? On June 12th, or July 12th, sorry. She first filed an intake form in March of 2010, which she also had to answer under oath various questions setting up her claim. On the 29th? Yes. And she then thereafter signed a charge, which was a summary or a compilation of what was in her intake forms. Now, if you take those charges that were in the July 12th, were there any of those charges that were written up in the July 12th charge of discrimination, which happened within 300 days of the alleged employment practice? Yes, there were. Why? She indicated specifically incidents that were outside of the 300 days, including the 205 incident and the... I'm sorry, 2005. The 2005 incident would not, as of 2010, have been 300 days, would it? I agree. And neither would the 2009 discussion that she had. And neither would the 2003. So when I read through what the charge of discrimination was and what she wrote up, I couldn't find anything in the charge of discrimination which would not have happened more than 300 days after the alleged employment practice. She did not identify by date specific incidents within the 300-day time frame. She did, however, state that the behavior... Well, would you look at your charge and tell me which ones of those did happen within the 300-day time frame? The ones that were identified by date are outside of the 300-day period, and we understand that. But she did, however, indicate that the behavior was ongoing throughout the term of her employment. And in the charge of discrimination, did you ever list at all that she was terminated? No. No, and we're not required to. What do you mean you're not required to? Isn't that something that is a charge which you now want to bring here? Under the Vasquez case, we are entitled to bring forward anything in the lawsuit that the EEOC could reasonably be expected to grow out of a charge that the EEOC would have discovered out of the charge. A claimant is not required to run back to the EEOC any time something further happens to file an additional charge. But certainly in the investigation of this, the EEOC would have uncovered her termination and the fact that her termination, she alleged, was a result of disparate treatment, which is the entire basis of her lawsuit. So under the Vasquez case, she's not required to go back and specifically note that termination within the charge or file a new charge for that. I see that I'm running into my rebuttal time. If I could reserve that time, I would appreciate it. Okay. Thank you. Good morning. May it please the Court. My name is Melanie Kochka and I represent Lowe's here today. Title VII is just simply unequivocal about what it requires for exhaustion of administrative remedies in 42 U.S.C. section 2000E-5B. It provides that the Commission shall serve a notice of the charge on such employer within 10 days and shall make an investigation thereof. And what if it doesn't? And what if it doesn't? If it doesn't, then the administrative prerequisites have not been met and the complaining party or the charging party cannot go to court. What are the prerequisites? The prerequisites are to file a charge. Which was done. Which was done. To conduct an investigation. No, the plaintiff can't conduct the investigation. No, it requires the Commission to make an investigation. But what is the prerequisite for the plaintiff to file the case? She has to file the charge and get her letter, right? She has to file the charge and get the letter, but arguably she has to allow the investigation to happen. Is there any place in any of the regulations which would suggest that? Yes. I mean, I realize I went right after them about that, and it doesn't seem like they're doing what Congress clearly intended to happen, but I'm having a tough time finding the regulation which would suggest they have to wait for the agency to do anything. They have to have two things. All right. In 29 CFR section 1601.28A provides that when a person requests a notice of right to sue, the Commission shall promptly issue such notice at any time after the expiration of 180 days from the date of filing of the charge with the Commission. That means that the charging party has to give the Commission at least a minimum of If you look at 29 U.S.C. section 2000 E-5B, it goes on and expressly provides that if the EEOC finds no reasonable cause, it can dismiss the charge. Now here, the charge was dismissed because it was requested to be dismissed. It wasn't upon a finding of no reasonable cause. Well, it was a resource allocation. I mean, the Commission decided that, you know, we've got lots of cases. We can't do all of them. This is one we're going to let go. Congress doesn't say they can do that. But how does that become the plaintiff's problem? It becomes a plaintiff's problem because she invited the error. She asked them to do it. If she had not sent that letter and filed the lawsuit, none of this would have happened. It would have gone through the police. I'm from the federal government. I'm here to help you. I help you by giving you this letter. What's the plaintiff supposed to do? Is she supposed to file an APA action against the EEOC, telling them that their action is arbitrary and capricious? I mean, what remedy does she have once the Commission issues the letter? If the Commission's issued it in error, if it's somehow not doing its job, they're all out watching TV, then what's somebody in Ms. Meyer's position supposed to do about that? She's supposed to go back to the agency and ask them to revoke the right to sue and process her charge through an investigation. I was in law school. They taught me when the judge says you've got permission to do something, you get out of the courtroom before the judge changes his mind. Is this a case where the plaintiff's supposed to say, no, no, no, you made a mistake here, take it back? Any regulations speak to that? No regulations speak to that, but 42 U.S.C. 2000 E.F. or 5.F. 1 says that a charging party can receive a notice of right to sue upon dismissal, which goes back to the dismissal on 5.B., which discusses finding no reasonable cause, or 180 days after filing the charge. So in the statute itself, Congress set out the circumstances under which the EEOC can issue the notice of the right to sue. It doesn't say that upon request of a charging party, the EEOC has the right to issue the notice of the right to sue. Lowe's has an interest in the administrative process, too. The administrative process under Title VII applies to the employer as well as the charging party. Well, did you respond? I mean, your client was given notice of the right to sue letter, the decision to close the file. Did your client file an APA action saying that's an arbitrary, capricious decision? No, because the lawsuit had been filed by that time. The EEOC did not issue the letter until September 23rd. We were not even served with the lawsuit until September the 8th. And after we had been served with it, we filed a notice of removal under diversity jurisdiction on October the 7th. And then we... I'm looking at the letter from the Nevada Department to Lowe's counsel, August 2010, telling Lowe's we're closing the case. Yeah, that's August 16th. Did anything... It is the 16th. Too small for me to read. Yes. Did anything preclude your client from filing an administrative action saying no, you don't have the right to do this? I don't. I mean, you're telling us the plaintiff should have filed such an action. Why shouldn't your client have filed such an action? I'm not really saying the plaintiff should have filed such an action. I'm saying the plaintiff shouldn't have written a letter or filed a lawsuit in the beginning. That's the acts that led the agency into error. Your client chose not to object to the administrative action even though they're the ones at the disadvantage. You're the ones that now face an action in court. Yes. And my client, because it wasn't allowed to go through the administrative process, raised the issue with the district court and said she did not exhaust the administrative prerequisites. Is the failure to exhaust jurisdictional? Well, the Ninth Circuit has gone back and forth on that. In Vasquez, they called it jurisdictional. In some other cases, they've said it's just a statutory prerequisite like a statute of limitations which is subject to certain equitable defenses which aren't applicable here. I'm not sure it really matters whether it's jurisdictional or whether it's just a statutory prerequisite. It wasn't met here and so therefore, the judge, certainly the district court had the right to dismiss it because she had not gone through those proper processes. She invited the error which occurred with the EEOC. One of the things I did want to bring to the court's attention is in the charge of discrimination which was probably based on events prior to March 29th, 2010, Myers-Desco did not mention her termination on May 15th, 2010. At the time of her termination, Lowe's was not aware that she had contacted the agency and indeed, the charge that was filed was not really formalized and filed until July 12th. Of course, on June 8th, Myers-Desco filed the complaint which was basically, although she called it negligent infliction of emotional distress, it was based on the failure to promote and termination of her employment. Then on June 23rd, of course, her attorney wrote the agency and said, given the fact that litigation has commenced, we formally request Ms. Myers-Desco's notice of right to sue. Because things unfolded in this way, the termination itself was never subject to the charge. In Vasquez v. County of Los Angeles, Vasquez had checked the box on the form for discrimination based on national origin but did not check the box for retaliation. The Ninth Circuit said because Vasquez did not present the legal theory of unlawful retaliation and the operative facts regarding this part of his claim are not related to the facts in the EEOC charge, he did not exhaust his administrative remedies. I've read those, counsel, but I guess I'm worried that they're not changing their theory. They're just changing the types of conduct which might be brought based on their theory. And then I read EEOC v. Farmer Brothers Company, 1994 case of ours, which says, and talking about similar circumstances, even if the layoff was not expressly stated in the EEOC charge, it was reasonably related to the other allegations and thus part of the charge because it would have been necessary for the EEOC to investigate the circumstances of the layoff and allowed her to proceed. So what do I do? Well, what you do is follow the Ninth Circuit authority. That is the Ninth Circuit authority, 1994 case. All right. But the Ninth Circuit has also held in Page and other decisions that the scope of the complaint in federal court is limited to the charge and the investigation. Here there was no investigation, and that's part of the problem. It could be true that perhaps if this case had been investigated, perhaps the EEOC would have learned of the termination and either amended the charge or at least included it in the scope of the investigation. But because no investigation was done, we're limited to the charges written, and the charges written pertains to training, promotions, and sexual harassment. And those are the only things that are mentioned. In the Occidental Life Insurance Company case v. EEOC, the Supreme Court described Title VII's requirements and then said at Page 359, the EEOC is then required to investigate the charge and determine whether there's reasonable cause to believe that it is true. Then the court continued and said, On the contrary, a natural reading of Section 706F1 can lead only to the conclusion that it simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but he must wait 180 days before doing so. Myers-Desco admits in her own brief that she had to wait 180 days. She did not wait 180 days. The EEOC did not wait 180 days. And so Myers-Desco and the agency deprived Lozevitz of its right to go through the administrative process prior to having to answer in court. On the negligent infliction of emotional distress claim, Myers-Desco alleges that you do not have to be a bystander in order to bring such a claim, but that claim alleges that Loze had a duty to ensure that its employees did not cause negligently or otherwise severe emotional distress to other employees. She alleges that Loze issued her unfounded and unnecessary written reprimands, urged her to voluntarily demote herself, failed to promote her, and terminated her employment for baseless allegations. This is the substance of the charge, and as you pointed out, Judge Smith, this is basically an employment discrimination allegation, put under a caption that says, negligent intention of emotional distress. The district court found that under Nevada law, the plaintiff had to be a bystander and not a direct victim. The court relied on Grotz v. Zaner. Myers-Desco relies on the Borman decision, but the Borman decision doesn't change the results. That was a case in which close family members who were aware that mortuary services were being performed were found outstanding to assert an emotional distress claim. Myers-Desco doesn't allege anything like that in her first amended complaint. These close family members were bystanders, so that requirement did not change in the law. She failed to identify, of course, any duty on behalf of Loze to ensure that its employees did not cause severe emotional distress, and she simply sought to recast her employment discrimination claims into a tort case so that she could bring her lawsuit. The district court did not hold that Myers-Desco could not file a state tort lawsuit. He simply said that by the way in which she did this one, she caused the agencies to dismiss her case and not follow the required prerequisites. I think plaintiff's counsel asked you why did the district court not remand the case back for administrative review. I think that's because the plaintiff did not ask the district court to do that. Do you know of any case in which a district court has remanded to an agency to conduct an investigation? I do not.  That the court has not done that? I don't think that a district court would remand something back to an agency. I don't think you did your job here, and it's not an APA claim. It's simply somebody who came in and said they gave me a right to sue. I've never heard of such a procedure. I've never heard of it either, and I think that's because there probably is not such a case. I think this is rare, this circumstance. In thirty years, I've never encountered it before, but I think that in this case, the plaintiff wanted to go to court, didn't want to go through the agency, didn't want to wait for the agency to do the investigation, and that's why after inquiring about filing a charge, she filed a lawsuit, and then she wrote the letter and asked the agency to dismiss it and give her a notice of right to sue, and then promptly right after that, she reduced her intake form to a charge of discrimination, which she signed under oath. Loews had just barely received notice of the charge, when on top of it, they received the notice from NERC that they were closing the case, and then, of course, about a month after that, the EEOC issued its notice of right to sue and reliance on the agency. But you do admit, I suppose, that there is Nevada administrative code that says the case may be closed if a party files a lawsuit involving any of the allegations of a complaint. Yes, there is such, but I would say to Your Honor that how would the agency know that a lawsuit had been filed unless the charging party brought it to the attention and asked the agency to rely on that. The Nevada Equal Rights Commission doesn't sit around and canvass civil district court filings in state and federal court to determine if that's met, so the only way they would have known about this lawsuit is because the charging party brought it to their attention, and Loews would request that you affirm the decision of the district court. Thank you. Ms. Nelson, you have about two and a half. I'll give you three minutes between the two of you. If you want to give some of it to Ms. Oxford, you're free to do so. I learned from the attorney before me to spend my time in preparing for rebuttal and answering questions. So I have some answers, which is delightful to me. I don't know if it will be as equally as delightful to you. But in the supplemental filing by Loews at the lower district court level, they attached the case from Pennsylvania of Susan Petrosky, and that is in the record beginning at ROA-096. The order of that particular court is in the record at ROA-1110, where the court specifically said, the claims brought under Title VII of the Civil Rights Act of 1964 are dismissed without prejudice and remanded for further administrative processing. That is a case that was brought to the lower court's attention by Loews. That is a case relied on by Loews at the lower district court level with respect to dismissal. In response to some of your questions, Judge Smith, about the charge and some of the dates contained within the charge, in looking at the record at 064, Myers-Desco indicates in her charge that it is a continuing action and that the last discriminatory act of which she is aware is July 6th of 2010. She also indicates throughout that charge that the respondent has and continues to deny me promotional opportunities. So all those general allegations are the only things she had in the complaint? That is correct, Your Honor. That is correct. The Arnold case indicates that we have the right to do what Myers-Desco did here. In Arnold v. The United States, which is a 1997 case out of the Ninth Circuit, it says that there's no obligation on the part of a claimant or a plaintiff to wait until the EEOC is done with any portion of their obligation, whatever that may be, to file state tort claims. So there was nothing wrong here with what Myers-Desco did, although for the first time, when Lowe stood up to argue, they finally identified what they said. They thought Myers-Desco herself did wrong and not the agencies. What they said was that she should not have filed a lawsuit. But Arnold clearly contradicts that contention, and for all of those reasons, we ask that the lower district court decision be overturned. Thank you. You've got about 25 seconds left. Is that something useful to tell us in that time? I'll talk fast. Judge Bivey asked about whether a charging party would have an APA action to force the agency to go forward, and on page 21 of our brief, we cite a 1983 decision of this court, Ward v. EEOC, where someone attempted to do that, and this court said, no, that's not allowed. Likewise, a respondent couldn't go to court. We retain control of our investigations. We dismiss, even without investigations, our regulation 1601.18a, talks about the circumstances where we might dismiss an action. There used to be additional provisions in 1601.18 where we said we might dismiss a case for a charging party's failure to cooperate with an investigation or because we couldn't find them. We amended that in 2008 because courts were becoming confused and thinking that that somehow would limit a charging party's ability to go forward with a lawsuit, and I'll give you the cite to that at Westlaw, 2008, Westlaw, 160371. We explain why courts erroneously were relying on that, and we hope that by eliminating those regulations, we've created a better climate for plaintiffs to proceed forward with their claims. We thank the court. Thank you. We thank all counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Bybee, Smith